# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

VINCENT WADE McGRAW,     )
                           )
           **Plaintiff,**       )
                           )     **Civil Action No. 3:11-cv-00256**
     **v.**                  )     **Judge Wiseman / Knowles**
                           )
MICHAEL J. ASTRUE,      )
**Commissioner of Social Security**   )
                           )
         **Defendant.**     )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 14. Defendant filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 15. Plaintiff subsequently filed a Reply. Docket No. 16.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgement on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I.  INTRODUCTION

Plaintiff filed his application for Disability Insurance Benefits ("DIB") on July 24, 2007,[1] alleging that he had been disabled since May 30, 2007, due to back, leg, and nerve pain, acid reflux, constipation, vision, fatigue, and depression.  *See, e.g.,* Docket No. 10, Attachment ("TR"), pp. 65, 111-15.  Plaintiff's application was denied both initially (TR 60) and upon reconsideration (TR 61).  Plaintiff subsequently requested (TR 73-74) and received (TR 32-59) a hearing.  Plaintiff's video hearing was conducted on September 22, 2009, by Administrative Law Judge ("ALJ") Joseph T. Scruton.  TR 32.  Plaintiff and vocational expert ("VE"), Leslie A. Gillespie,[2] appeared and testified.  *Id.*

On November 23, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 12-31.  Specifically, the ALJ made the following findings of fact:

> 1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2.    The claimant has not engaged in substantial gainful activity since May 30, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3.    The claimant has the following severe impairments: lumbar spine degenerative disc disease with radiculopathy to the left lower extremity; status post lumbar spine surgery; history of carpal tunnel syndrome; depression; anxiety;

---

[1] The ALJ's decision listed Plaintiff's application date as June 26, 2007.  TR 15.  The record shows the application date as July 24, 2007.  TR 111.  This difference is immaterial to the issues before the Court.

[2] The ALJ stated that the VE was "Leslie A. Gillespie."  TR 15.  The hearing transcript identified the VE as "Ms. Lutsky" based on phonetic description.  TR 34.  This discrepancy is immaterial to the issues before the Court.

history of alcohol and marijuana abuse; and borderline obesity (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a). Specifically, he can lift and carry 2-3 pounds frequently and up to 10 pounds occasionally. His ability to handle push and pull controls is consistent with his lifting and carrying limitations. He can sit up to 6 hours as well as stand and walk up to two hours in an eight hour workday. He can frequently but not continuously handle, finger and feel bilaterally. He can occasionally stoop, kneel and crouch. He cannot crawl or climb. He may rarely use foot controls. He must avoid all exposure to workplace hazards such as heights, moving machinery or moving parts. He must avoid concentrated exposure to vibrations. He can understand, remember and carry out short, simple instructions and some detailed instructions but not complex instructions. He is able to interact appropriately with co-workers, supervisors and the public on a frequent but not continuous basis. He is able to adapt to occasional changes in the work setting.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on September 30, 1966 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that

the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 30, 2007 through the date of this decision (20 CFR 404.1520(g)).

TR 17-26.

On January 14, 2010, Plaintiff timely filed a request for review of the hearing decision. TR 9. On January 18, 2011, the Appeals Council issued a letter declining to review the case (TR 1-4), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The

purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (citing *Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition

---

[3] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

<u>**C.  Plaintiff's Statement Of Errors**</u>

Plaintiff contends that the ALJ erred in: (1) improperly evaluating Plaintiff's subjective complaints of pain; (2) determining his residual functional capacity ("RFC"); (3) rejecting the opinion of his treating physicians, Drs. Misra and Fernandez; (4) failing to consider all of the evidence in evaluating his limitations, both singly and in combination; (5) "rejecting" the vocational expert ("VE") testimony; and (6) failing to consider his Global Assessment of Functioning ("GAF") scores.[4]  Docket No. 14-1.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking."  *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

---

[4]Plaintiff reiterates these contentions in his Reply.  Docket No. 16.

## 1. Subjective Complaints of Pain

Plaintiff contends that in finding that his subjective complaints were not fully credible, the ALJ did not appropriately evaluate his complaints of pain as required by SSR 96-7p. Docket No. 14-1 at 11-14. Plaintiff argues that an ALJ cannot make a single, conclusory statement that a claimant's allegations have been considered or that a claimant's allegations are not credible, nor can the ALJ base a credibility determination on a claimant's ability to perform intermittent activities of daily living. *Id.* Plaintiff asserts that his testimony regarding his subjective complaints is supported by the opinions of his treating physicians, but that the "ALJ failed to mention these consistencies," and therefore failed to acknowledge the entire record in his determination. *Id.* at 12. Plaintiff additionally asserts that the ALJ erroneously failed to specifically state whether he found Plaintiff's testimony to be credible, and erroneously failed to specifically state the amount of weight he accorded to Plaintiff's testimony. *Id.* at 13-14.

Defendant responds that the ALJ properly determined that Plaintiff's subjective complaints were not fully credible based on the inconsistencies between Plaintiff's subjective complaints and the medical and testimonial evidence of record. Docket No. 15 at 8-10.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability . . . [T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d

Sess. 24) (emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled . . . ."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (construing 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to

the extent they are inconsistent with the above residual functional capacity assessment." TR 20.

The ALJ, in his decision, explained the following regarding Plaintiff's credibility:

> The claimant's credibility as to the severity of his mental health symptoms is undermined by inconsistencies between the claimant's symptoms and his treatment record. On February 9, 2008, the claimant's mother noted in a Function Report that "[f]illing out forms sends [the claimant] into a tail spin." (Exhibit 12E). However, his therapy records indicated improvement in his mood and symptoms following his hospitalization at the end of 2007. (Exhibit 13F). Julius Fernandez, M.D. reported, on June 4, 2008, that the claimant complained of memory loss, but Dr. Fernandez noted his recent and remote memory was intact and his concentration was normal. (Exhibit 17F).
>
> The claimant did not describe any worsening in his symptoms at the hearing. The claimant testified he has not received any mental health treatment since February 2009, but he has been able to function independently and has not experienced an episode of decompensation. He also testified he spends much of his time watching documentaries. The claimant testified he sometimes has problems with people.
>
> At the hearing, the claimant testified he intermittently experiences numbness in his fingers and burning in his arms due to carpal tunnel syndrome. He wears braces at night to treat this condition. Although the claimant had regular appointments with physicians during 2007 and 2008, the medical record does not contain evidence the claimant sought further treatment. The undersigned gives the claimant the benefit of the doubt and limits him to frequent but not continuous handling, feeling and fingering.
>
> The claimant's medical records as well as clinical and laboratory findings support and verify his complaints of back pain. On June 29, 2007, Kenneth Bartholomew, MD noted, during the claimant's physical examination, that the claimant had a mildly positive left straight leg raising test as well as muscle tenderness and spasm. (Exhibit 4F). Alan Bachrach, M.D. noted that given his clinical history, the claimant's July 25, 2007 EMG plus physical findings were most consistent with a chronic polyneuropathy. (Exhibit 3F).
>
> On July 28, 2007, M. Erin Judson, MSN, APRN-BC noted the claimant's findings were consistent with neuropathic pain

11

syndrome. (Exhibit 4F). The claimant underwent a decompresive laminectomy L5 and spinal fusion on October 1, 2007. (Exhibit 12F). Dr. Davis noted, during a physical examination of the claimant on October 16, 2006, that the claimant had slow gait maneuvers and slow position changes. (Exhibit 5F). Gray Stahlman, M.D. reviewed an MRI taken on January 17, 2008. He stated that the claimant had fairly marked disk degenerative changes at L4-5 and severe disk degenerative changes at L5-S1 with associated spondylolishthesis. (Exhibit 12F). On June 9, 2008, Dr. Batholomew noted the claimant's range of motion was significantly limited in all parameters. (Exhibit 19F). The claimant was prescribed narcotic pain medications as well as nerve blocks and epidurals. (Exhibits 1F, 2F, 4F, and 18F).

The clinical and radiological deficits note[d] above reflect a substantial loss of physical ability and is consistent with the reduced capacity demoted [*sic*] in the residual functional capacity determination in this decision, when balanced against the record as a whole. For example, the medical record contains a considerable number of findings upon physical examination that the undersigned finds inconsistent with a claim of an inability to perform any sustained work. Dr. Bachrach noted there were no fibrillation potentials or PSW's on the claimant's EMG to suggest ongoing denervation in any of the muscles examined. (Exhibit 3F). The claimant's January 2008 MRI did not show any substantial foraminal or lateral recess stenosis. (Exhibit 12F). Dr. Bartholomew consistently noted the claimant had intact sensation, symmetric reflexes, and 5/5 motor strength in all extremities. (Exhibits 4F, 11F and 19F). Beginning on April 7, 2008, Dr. Bartholomew noted the claimant was negative bilaterally on the straight leg raising test. (Exhibit 19F).

Additionally, the claimant recovered following a T4 to L2 posterior spinal segmental instrumentation on May 5, 2008 to correct multiple traumas incurred in a motor vehicle accident. (Exhibit 19F). However, Dr. Fernandez saw the claimant three times over the four months following the surgery and he noted no abnormalities and good correction of his kyphotic deformity. Dr. Fernandez recommended the claimant begin follow up visits every six months, even though the claimant reported falling at his last appointment. (Exhibit 17F). Following the surgery through 2009, the claimant consistently reported at least moderate pain relief from his medications to Dr. Bartholomew. On February 17, 2009, Dr. Bartholomew noted the claimant reported exercising and an

improvement in his physical and mental health.  (Exhibit 19F).

The claimant reported that his carpel tunnel, his low back pain, and his lower extremity pain began in 1998.  (Exhibit 2E).  After the initial onset, the claimant experienced intermittent periods of worsening.  (Exhibit 4F).  He had three lumbar surgeries in 1998 and two in 2005.  (Exhibits 1F and 2F).  However, the record shows that the claimant maintained his good employment record performing heavy exertion work until May 30, 2007, a factor which appears inconsistent with the alleged severity of his impairments.

Although claimant has alleged various side effects from the use of medications, the medical records, such as office treatment notes, subsequent to his December 2007 hospitalization do not corroborate those allegations.  On February 9, 2008, the claimant's mother reported his medications caused the claimant to become confused and to misunderstand or forget.  (Exhibit 12E).  The claimant testified his pain medications caused insomnia and his sleep medications gave him restless leg.  His treatment notes from the Dr. Bartholomew note the claimant reported constipation sedation and sexual dysfunciton on April 7, 2008.  The claimant subsequently reported continuing problems with constipation.  (Exhibit 19F).  While he is not currently taking any medications, the undersigned finds the claimant must avoid all exposure to workplace hazards such as heights, moving machinery or moving parts.

The claimant has admitted certain abilities which provide support for part of the residual functional capacity conclusion in this decision.  The claimant testified his doctors recommended he restrict his lifting to under twenty-five pounds.  In a written statement, his mother estimated he could lift up to 20 pounds and walk about a ½ mile.  She also reported relying on the claimant for assistance in describing his condition.  (Exhibit 12E).  However, the claimant also testified the heaviest thing he lifts is a laptop and that the weight of wet laundry aggravates his pain.  The undersigned finds the claimant credible to the extent he would experience back pain with heavy lifting.  The residual functional capacity was, accordingly, reduced to accommodate those limitations by limiting the claimant to lifting and carrying 2-3 pounds frequently and up to 10 pounds occasionally.  His ability to handle push and pull controls is consistent with this lifting and carrying limitations.

The claimant's description of symptoms at the hearing was
relatively vague and generalized, lacking the specificity which
might otherwise make it more persuasive. Somewhat in contrast to
earlier written statements of record, at [the] hearing he had
difficulty estimating his physical abilities, repeatedly responding
they "vary." The claimant also provided very brief responses to
direct questions from the undersigned while testifying, and
volunteered very little additional information.

The claimant's testimony contained inconsistencies which
rendered it less persuasive. He testified he attempts to relieve his
constant pain by generally staying in bed, but he also testified he
goes grocery shopping "just for the exercise." He testified he
spends most of his time watching television, particularly
documentaries, which suggests a level of concentration
inconsistent with a disabling level of pain. He stated he cannot
bend or twist. However, he testified he is able to shower and dress
himself. The claimant testified he uses a cane, although he did not
bring it to the hearing. The claimant testified, despite not taking
any medication since February 2009, his pain level on average is a
4-6. This contrasts with his most recent February 17, 2009
treatment note from Dr. Bartholomew where he reported a pain
level of 6 of 10 with a moderate improvement of pain relief from
his medication. (Exhibit 19F).

. . .

The claimant's credibility as to the severity of his mental and
physical limitations is also undermined by evidence he failed to be
forthcoming with his treating physicians. Dr. Bartholomew noted
the claimant consistently denied using marijuana, even though his
urine drug screen was positive more than once. (Exhibit 4F). The
claimant testified his motor vehicle accident was a suicide attempt,
but he did not report this intent to any medical personnel despite
being hospitalized for some time. The claimant did not report any
muscle aches or joint pains during his physical exam taken when
he was hospitalized for depression in December 2007. (Exhibit
9F).

TR 21-23.

As can be seen, the ALJ's decision specifically addresses in great detail not only the

medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that

these factors were considered. TR 20-25. Moreover, contrary to Plaintiff's assertion, the ALJ explicitly discussed the evidence that was consistent with Plaintiff's subjective complaints. TR 21-13. Despite there being instances of congruency, after reviewing the record in its entirety, the ALJ found that many of Plaintiff's complaints were not fully credible because they were inconsistent with the overall medical evidence of record or with Plaintiff's own testimony. *Id.* The ALJ specifically discussed inconsistencies within Plaintiff's testimony and occasions when Plaintiff was not entirely forthcoming with his physicians, and specifically discussed the medical evidence that did not support Plaintiff's subjective complaints. *Id.* Additionally, the ALJ explained in his decision why Plaintiff's vague testimony at his hearing led the ALJ to further discount his credibility. *Id.*

The ALJ's decision properly discusses Plaintiff's "activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain." *Felisky*, 35 F.3d at 1039 (*construing* 20 C.F.R. § 404.1529(c)(2)). It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's

demeanor and credibility.  *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)).  Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence.  *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)).  If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that Plaintiff's limitations were not as severe as he alleged.  TR 20-25.  As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision.  The ALJ's findings are supported by substantial evidence for the reasons discussed throughout this Report and Recommendation, and the decision not to accord full credibility to Plaintiff's allegations was proper.  Therefore, this claim fails.

**2.  Residual Functional Capacity**

Plaintiff maintains that the ALJ's residual functional capacity ("RFC") determination was erroneous, because that determination is inconsistent with SSR 96-9p and 20 CFR 404, Subpt. P., App. 2, 201.00(h)(4).  Docket No. 14-1 at 7, 14.  Plaintiff contends that the medical evidence establishes that his RFC is actually less than sedentary.  *Id.* at 14.  Plaintiff additionally takes issue with the hypothetical questions posed by the ALJ to the VE, and takes issue with the ALJ's reliance upon the VE's answers thereto when determining Plaintiff's RFC.  *Id.* at 7.  Plaintiff's

contentions regarding the ALJ's hypothetical questions and his reliance on the VE's answers will be discussed *infra* Part III.C.5.

Defendant responds that the ALJ's RFC determination was proper and consistent with SSR 96-9p and 20 CFR 404, Subpt. P., App. 2, 201.00(h)(4).  Docket No. 15 at 11.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. Pt. 404, Subpt. P, App. 2, 200.00(c).  With regard to the evaluation of physical abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis.  A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b).

Plaintiff correctly states that a claimant's sporadic daily activities may not indicate what a claimant can do on a sustained basis, particularly where the claimant experiences periods of remission and exacerbation.  Docket No. 14-1 at 13; *See Cohen v. Secretary*, 964 F.2d 524 (6th Cir. 1992).  Plaintiff is incorrect, however, that the ALJ based his determination on "sporadic daily activities."  Rather, the record in the case at bar is replete with doctors' evaluations, medical assessments, and test results, all of which were properly considered by the ALJ in determining Plaintiff's "residual functional capacity for work activity on a regular and continuing basis."

After evaluating all of the objective medical and testimonial evidence of record and Plaintiff's reported level of activity, the ALJ determined that Plaintiff retained the RFC to perform less than a full range of sedentary work.  TR 20.  Specifically, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a).  Specifically, he can lift and carry 2-3 pounds frequently and up to 10 pounds occasionally.  His ability to handle push and pull controls is consistent with his lifting and carrying limitations.  He can sit up to 6 hours as well as stand and walk up to two hours in an eight hour workday.  He can frequently but not continuously handle, finger and feel bilaterally.  He can occasionally stoop, kneel and crouch.  He cannot crawl or climb.  He may rarely use foot controls.  He must avoid all exposure to workplace hazards such as heights, moving machinery or moving parts.  He must avoid concentrated exposure to vibrations.  He can understand, remember and carry out short, simple instructions and some detailed instructions but not complex instructions.  He is able to interact appropriately with co-workers, supervisors and the public on a frequent but not continuous basis.  He is able to adapt to occasional changes in the work setting.

*Id.*  For the reasons discussed below, the ALJ properly evaluated the evidence in reaching this RFC determination, and the Regulations do not require more.

Plaintiff contends that the ALJ's determination regarding his lifting restriction is inconsistent with SSR 96-9p.  Docket No. 14-1 at 7.  SSR 96-9p provides that "the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools."  It notes that, if a person cannot maximally lift and/or carry more than 1 or 2 pounds, then the available unskilled sedentary occupational base would be eroded significantly, but also notes that, "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a

decision of 'disabled.'"  SSR 96-9p.

While Plaintiff correctly notes that SSR 96-9p provides that "an inability to lift or carry more than one or two pounds would erode the unskilled sedentary occupational base significantly," the ALJ determined that Plaintiff retained the RFC to do more than that.  TR 20. Specifically, the ALJ determined that Plaintiff could lift and/or carry 2-3 pounds frequently and up to 10 pounds occasionally.  *Id.*  The ALJ's determination is, therefore, consistent with SSR 96-9p.

Plaintiff additionally asserts that medical and testimonial evidence supports that he cannot work a full eight hour workday and that his ability to perform exertional activity falls below the sedentary standard set forth in 20 CFR 404, Subpt. P., App. 2, 201.00(h)(4).  Docket No. 14-1 at 14.  That Regulation states as follows:

> (4) "Sedentary work" represents a significantly restricted range of work, and individuals with a maximum sustained work capability limited to sedentary work have very serious functional limitations. Therefore, as with any case, a finding that an individual is limited to less than the full range of sedentary work will be based on careful consideration of the evidence of the individual's medical impairment(s) and the limitations and restrictions attributable to it. Such evidence must support the finding that the individual's residual functional capacity is limited to less than the full range of sedentary work.

20 CFR 404, Subpt. P., App. 2, 201.00(h)(4)

Plaintiff is correct in stating that his RFC is less than sedentary.[5]  Docket No. 14-1 at 14.

---

[5] As support, Plaintiff states:

> The totality of proof is that the Plaintiff can lift only ten pounds occasionally; walk/stand less than two hours in a workday; must alternate sitting and standing;

This assertion is consistent with the ALJ's RFC finding regarding Plaintiff, as the ALJ similarly found that Plaintiff could perform less than the full range of sedentary work. TR 20. As will be discussed in greater detail below, the ALJ thoroughly evaluated the medical evidence of record and determined that, although Plaintiff had serious functional limitations, he nevertheless retained the RFC for less than the full range of sedentary work. *Id.* The ALJ determined that Plaintiff's RFC did not preclude him from being able to perform any work. *Id.* As noted, SSR 96-9p indicates that, "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled.'" Additionally, as will be discussed *infra*, in Part III.C.5., the VE testified that there were a significant number of jobs within the state and national economies that Plaintiff could perform with the above RFC. TR 25-26, 54-56.

Moreover, as can be seen in the ALJ's detailed discussion of the medical evidence quoted in the previous statement of error, the ALJ relied upon several medical sources in determining Plaintiff's RFC. For instance, the ALJ discussed Dr. Alan F. Bachrach's, M.D., Ph.D., examination of Plaintiff in the summer of 2007. TR 22, 204-05. Dr. Bachrach performed Sensory NCS, Motor NCS, and Needle EMG tests upon Plaintiff, and, upon their completion, noted the following:

> Three of four motor NCVs were slightly slow. In addition, fasiculations were noted in the EDB muscles bilaterally.

should never climb, kneel, crouch, crawl, or stoop; and has significant manipulative limitations.

Docket No. 14-1 at 14. Because Plaintiff does not assert any errors with the ALJ's determination regarding Plaintiff's mental limitations, those limitations will not be discussed herein.

Fasiculations and muscle contractions were noted in the thigh and calf muscles, particularly on the left, but no electrical evidence of fasiculations was measured except in the EDB muscles.

The mild slowing of the motor NCVs may indicate a generalized neuropathy. However, given the clinical history, this patient's EMG plus physical findings are most consistent with a chronic polyneuropathy. There were no fibrillation potentials or PSW's to suggest ongoing denervation in any of the muscles examined.

TR 205. The ALJ determined that these findings were ones of among several medical findings that were "inconsistent with a claim of an inability to perform any sustained work." TR 21-22.

On October 15, 2007, Dr. Bruce A. Davis, M.D., performed a consultative exam. TR 209-11. Upon examination, Dr. Davis observed that Plaintiff: was in no acute distress; was well developed with no obvious deformities; had full motion and good strength in his neck (normal flexion, extension, lateral flexion, rotation) and both upper extremities (normal shoulder/elbow, wrist/finger motion/dexterity, good grip - 5/5); did not have tenderness or swelling with his lower back surgery scars, though did have some pain; was slow in changing positions; could not squat completely; did not have clubbing, cyanosis, lymphadenopathy, or edema; and, performed slow gait and gait maneuvers (heel, tow, and tandem) across the exam room without assistance. *Id.* With regard to Plaintiff's range of motion, Dr. Davis observed the following musculoskeletal measurements: 30 degree thoracolumbar flexion, 10 degree extension, 15 degree lateral motion, 100 degree hip flexion, 30 degree abduction, 70 degree supine/70 degree seated straight leg raising, and 130 degree normal knee flexion with zero degree extension. *Id.*

Dr. Davis opined that Plaintiff could lift and/or carry 10 pounds frequently and occasionally; stand and/or walk 2-4 hours in an 8 hour workday; sit 8 hours in an 8 hour

workday; perform limited bending and squatting; and perform limited climbing/heights. *Id.*

After considering Dr. Davis's examination and the evidence its entirety, the ALJ found that this opinion was consistent with the medical record. TR 24. The ALJ, therefore, accorded it significant weight, and ultimately determined that Plaintiff could "sit up to 6 hours as well as stand and walk up to two hours in an eight hour workday . . . occasionally stoop, kneel and crouch . . . cannot crawl or climb." *Id.*

The ALJ also considered records from Plaintiff's back surgeon, Dr. Gray Stahlman, M.D. TR 280-95. Specifically, the ALJ noted that Plaintiff "underwent a decompressive laminectomy L5 and spinal fusion on October 1, 2007." TR 21, 280-95. The ALJ observed:

> On January 22, 2008, Dr. Stahlman stated the claimant would likely "never be substantially employable in a position that requires him to do any kind of lifting, standing, bending, twisting, or walking," but he "may be able to do some form of sedentary work." (Exhibit 12F). Dr. Sathlman did not describe the claimant's abilities. His opinion is not inconsistent with a finding the claimant is able to perform sedentary work. It is given marginal weight because its vague language prevents a function by function assessment of the claimant's ability to perform work.

TR 23. As noted by the ALJ, while Dr. Stahlman's opinion is not conclusive, it supports an RFC of less than a full range of sedentary work.

Additionally, as noted in the statement of error above, Dr. Julius Fernandez, M.D., treated Plaintiff in 2008 following his lumbar surgery "to correct multiple traumas incurred in a motor vehicle accident." TR 22; 338-50. Regarding these records, the ALJ stated in part:

> Dr. Fernandez saw the claimant three times over the four months following the surgery and he noted no abnormalities and good correction of his kyphotic deformity. Dr. Fernandez recommended the claimant begin follow up visits every six months, even though

22

the claimant reported falling in his last appointment. (Exhibit 17F).

TR 22.

After his last recorded examination on September 19, 2008, Dr. Fernandez noted that Plaintiff's back wound was well-healed, clean, dry, and intact with no signs or symptoms of infection; Plaintiff appeared well developed, well nourished, and in no acute distress; Plaintiff's gait and station was normal; and, his motor strength was 5/5 for both upper and lower extremities. TR 339-40. These findings are consistent with the ALJ's determination that, while Plaintiff's limitations are severe, he nevertheless retains the capacity to perform less than a full range of sedentary work.

Moreover, the ALJ's determination is supported by records from Dr. Kenneth Bartholomew, M.D., who treated Plaintiff from June 2007 to February 2009. TR 206-08, 262-79, 367-414. Regarding records from Dr. Bartholomew, the ALJ stated in part:

> . . . On June 29, 2007, Kenneth Bartholomew, MD noted, during the claimant's physical examination, that the claimant had a mildly positive left straight leg raising test as well as muscle tenderness and spasm. (Exhibit 4F). . . .

> . . . On June 9, 2008, Dr. Bartholomew noted the claimant's range of motion was significantly limited in all parameters. (Exhibit 19F).

> . . .

> . . . Dr. Bartholomew consistently noted the claimant had intact sensation, symmetric reflexes, and 5/5 motor strength in all extremities. (Exhibits 4F, 11F, and 19F). Beginning on April 7, 2008, Dr. Bartholomew noted the claimant was negative bilaterally

on the straight leg raising test.  (Exhibit 19F).

> . . . Following the surgery through 2009, the claimant consistently
> reported at least moderate pain relief from his medications to Dr.
> Bartholomew.  On February 17, 2009, Dr. Bartholomew noted the
> claimant reported exercising and an improvement in his physical
> and mental health.  (Exhibit 19F).

TR 21-22.

As can be seen through the quoted passages here and in the statement of error above, the

ALJ considered the evidence of record, reached a reasoned decision, and clearly articulated the

basis for his RFC finding.  Substantial evidence supports the ALJ's determination; the ALJ's

determination, therefore, must stand.

### 3.  Weight Accorded to the Opinions of Drs. Misra and Fernandez

Plaintiff contends that the ALJ erred in failing to give controlling weight to the opinions

of Drs. Misra and Fernandez, two of Plaintiff's treating physicians.  Docket No. 14-1 at 14-17.

Plaintiff argues that the ALJ used faulty reasoning and ignored the record when rejecting their

opinions.  *Id.*  Plaintiff also argues that "[t]he ALJ should not be allowed to ignore the obvious

and then ambush the Plaintiff in his decision because such action is fundamentally not fair."

Docket No. 14-1 at 16.

Defendant responds that the ALJ properly accorded their opinions little weight because

"the Commissioner is not required to defer to an unsupported conclusory opinion of disability."

Docket No. 15 at 15.  Defendant argues that the ALJ properly accorded more weight to Dr.

Davis' opinion because it was consistent with Plaintiff's medical records.  *Id.*  Additionally,

Defendant notes that Dr. Stahlman's opinion supports the ALJ's finding that Plaintiff can engage

in some kind of substantial work.  *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive.  Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship.  Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship.  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. . . .
>
> (3) Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion. . . .
>
> (4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 C.F.R. § 416.927(d) (emphasis added).  *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Code of Federal Regulations defines a "treating source" as:

[Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

Drs. Misra and Fernandez each completed a Request for Medical Information form from the State of Tennessee Department of Human Services.  TR 24, 353, 338.  Both physicians checked the box indicating that Plaintiff was "unfit for employment or training for employment."  *Id.*  Neither form, however, contained any narrative explaining the medical basis of Plaintiff's functional limitations that would preclude him from employment.  *Id.*

The ALJ is not bound by conclusory statements from a treating physician that a claimant is disabled because the definition of disability requires consideration of both medical and vocational factors.  *See, e.g., King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988).  Regarding the opinions of Drs. Misra and Fernandez, the ALJ stated:

Although they are treating physicians, the opinions of Ameresh

26

> Misra, M.D. and Dr. Fernandez are given little weight.  Both
> doctors filled out a "Request for Medical Information" from the
> State of Tennessee Department of Human Services in which each
> checked a box stating the claimant was "unfit for employment or
> training for employment." (Exhibit 17F and 18F).  Dr. Misra also
> indicated the claimant was mentally unfit for employment. (Exhibit
> 18F).  These statements are opinions on an issue reserved to the
> Commissioner of Social Security.  A statement by a medical
> source that the claimant is "disabled" or "unable to work" does not
> mean that the [*sic*] such claimant will be determined to be disabled
> as that term is defined in the Act (20 C.F.R §§ 404.1527(e) and
> 416.927(e) and Social Security Ruling 96-2p).  Neither doctor
> provided a narrative to explain the medical basis for selecting this
> opinion.

TR 24.

As the ALJ correctly noted, neither physician provided any explanation or medical evidence to support the indicated conclusion.  *Id.*  Because the physicians failed to explain the medical reasons for their opinions, and failed to cite medical evidence supporting their opined functional assessments, the opinions of Drs. Misra and Fernandez contained in the Request for Medical Information form are conclusory, and therefore not entitled to controlling weight.

Moreover, Dr. Fernandez's opinion expressed in the Request was inconsistent with his own treating notes. TR 22, 338-341.  The ALJ recounted Dr. Fernandez' observations that Plaintiff appeared well developed and well nourished, had normal gait and station, had 5/5 motor strength in both extremities, and displayed no abnormalities in the lumbar spine.  *Id.*  Dr. Fernandez also observed that, despite still having "failed back surgery syndrome and issues of previous lumbar surgery," Plaintiff had done extremely well with his back.  *Id.*  The ALJ further noted Dr. Fernandez' indication that he did not need to see Plaintiff again for another six months.  *Id.*  Dr. Fernandez made these statements and observations on September 19, 2008, *the same day*

he completed the Request form opining that Plaintiff was permanently unfit for employment.  *Id.*  These inconsistencies support the ALJ's decision to accord little weight to Dr. Fernandez's opinion.[6]

Furthermore, the opinions of Drs. Misra and Fernandez are also inconsistent with other physicians' medical opinions considered by the ALJ.  Examining physician Dr. Davis and two consulting physicians all opined that Plaintiff could engage in limited physical activities, such as lifting, pushing, pulling, sitting, standing, walking, stooping, kneeling, and crouching.  TR 23-24, 211, 255-256, 313-314.  Additionally, Dr. Stahlman, another treating physician, opined that even though Plaintiff would not be able to work in a position that required lifting, standing, bending, twisting or walking, he might be able to do "some form of sedentary work."  TR 23, 280.

As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2).  Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above.  *Id.*  When the opinions of treating physicians are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner.  20 C.F.R. § 416.927(e)(2).  The opinions of Drs. Misra and Fernandez were inconsistent with the evidence of record, including their treatment notes and

---

[6] Regarding the treatment notes of Dr. Misra, most of those notes are illegible.  TR 351-366.  While Dr. Misra's medical records did note Plaintiff's back and arm pain, it does not appear that Dr. Misra explained why the pain prevented Plaintiff from engaging in any gainful activity, including modified sedentary work.  *Id.*

the opinions of other physicians of record. As such, the Regulations do not mandate that the ALJ accord the opinions of Drs. Misra and Fernandez controlling weight. Accordingly, Plaintiff's argument fails.

## 4. Considering All the Evidence In Evaluating Impairments

Plaintiff contends that, although the ALJ mentioned certain evidence in his opinion, "it would appear that the ALJ did not take them into consideration in his finding of not disabled." Docket No. 14-1 at 8-9. Specifically, Plaintiff argues that the ALJ failed to consider what effect that evidence would have on his ability to work, in violation of SSR 85-28, which requires the ALJ to consider all the physical impairments and provide an analysis regarding how the physical impairments, either individually or in combination, impact the claimant's ability to engage in substantial gainful activity. *Id.*

Defendant responds that Plaintiff bears the burden to prove the severity of his alleged impairments. Docket No. 15 at 14. Defendant further responds that the ALJ properly evaluated Plaintiff's severe impairments and "did not ignore the underlying medical evidence which established the severity of these impairments." *Id.*

In his opinion, the ALJ determined that Plaintiff suffers from the following severe impairments: lumbar spine degenerative disc disease with radiculopathy to the left lower extremity; status post lumbar spine surgery; history of carpal tunnel syndrome; depression; anxiety; history of alcohol and marijuana abuse; and borderline obesity. TR 17. The ALJ then throughly discussed and evaluated the medical and testimonial evidence of record in determining Plaintiff's RFC. TR 20-25.

Plaintiff argues that the ALJ failed to properly consider the following evidence:

> The ALJ stated in his decision that "the claimant's lumbar spine degenerative disc disease with radiculopathy to the left lower extremity and status post lumbar spine surgery are not characterized by nerve root compression, spinal archnoiditis, or spinal stenosis, and therefore do not meet Medical Listing 1.04["]. However, a CT conducted on September 11, 2007 revealed moderate right foraminal stenosis. R 295.[7]

> . . .

> [O]n July 28, 2007, M. Erin Judson, MSN, APRN-BC noted the claimant's findings were consistent with nueropathic pain syndrome. R. 206-208 The claimant underwent a decompressive laminectomy L5 and spinal fusion on October 1, 2007. R. 280-295 Dr. Davis noted, during a physical examination of the claimant on October 16, 2007, that the claimant had slow gait maneuvers and slow position changes. R. 209-211 Gray Stahlman, M.D. reviewed an MRI taken on January 17, 2008. He stated the claimant had fairly marked disk degenerative changes at L4-5 and severe disk degenerative changes at L5-S1 with associated spondylolisthesis. Ex 12F On June 9, 2008, Dr. Bartholomew noted the claimant's range of motion was significantly limited in all parameters. [E]x 19[F] The claimant was prescribed narcotic pain medication as

---

[7] To the extent that Plaintiff may here be arguing that he meets Listing 1.04, the Sixth Circuit has held that, "[i]ssues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). If Plaintiff is contending that the September 11, 2007 CT revealing moderate right foraminal stenosis undermines the ALJ's statement so as to demonstrate that he meets Listing 1.04, that sentence would be referring to the issue in a perfunctory manner, and is insufficient to develop an argument that Plaintiff meets Listing 1.04. *Id.* Accordingly, to the extent that Plaintiff contends that he meets Listing 1.04, that issue is deemed waived. *Id.*

Moreover, on January 22, 2008, Dr. Stahlman remarked the following:

> The MRI of his lumbar spine done at TOA on 01/17/2008 was reviewed. . . . There is no substantial foraminal or lateral recess stenosis.

TR 280. The 2008 MRI findings are more recent than the referenced 2007 CT, and they contradict Plaintiff's assertion, while supporting the ALJ's determination.

well as nerve blocks and epidurals. R. 187-199; 200-203; 206-208; 351-366.

Docket No. 14-1 at 8, *quoting* TR 21 (footnote added).

Despite Plaintiff's contention that the ALJ did not take this evidence into consideration when making his disability determination, immediately after discussing the evidence in his decision, the ALJ stated:

> The clinical and radiological deficits notes [*sic*] above reflect a substantial loss of physical ability and is consistent with the reduced capacity demoted [*sic*] in the residual functional capacity determined in this decision, when balanced against the record as a whole. For example, the medical record contains a considerable number of findings upon physical examination that the undersigned finds inconsistent with an inability to perform any sustained work . . . .

TR 21-22.

The ALJ's decision demonstrates that he did consider the quoted evidence in his determination, and he found that it was consistent with his RFC finding when viewing the record as a whole. *Id.* While it is true that some of the testimony and evidence supports Plaintiff's allegations of disability, it is also true that much of the evidence supports the ALJ's determination that Plaintiff retains the capacity to perform less than a full range of sedentary work with certain exertional and non-exertional limitations. TR 20.

As has been noted, the reviewing court does not substitute its findings for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner*, 745 F.2d at 387. In fact, even if the evidence could also support a different conclusion,

the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key*, 109 F.3d at 273). The ALJ properly considered all available evidence in making his determination. His decision was properly supported by "substantial evidence;" therefore, the ALJ's decision must stand.

## 5. Reliance on the Vocational Expert Testimony

Plaintiff argues that the "ALJ's determination to reject the opinion of testifying VE Dr. Lutsky [*sic*] is not supported by substantial evidence." Docket No. 14-1 at 11. Specifically, Plaintiff notes the VE testified that an individual who needed unscheduled breaks or who had a GAF score of 50 (indicating marked impairments) would be unable to maintain employment. *Id.*

Defendant responds that the ALJ properly relied upon the VE testimony that corresponded with Plaintiff's limitations that he found credible. Docket No. 15 at 12. Defendant further responds that the VE's testimony provides substantial evidence that supports the ALJ's decision. *Id.*

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations or environmental limitations. *Abbot v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). In

the presence of nonexertional limitations that would preclude the application of the grid regulations, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle." *Kirk v. Secretary*, 667 F.2d 524, 531 (6th Cir. 1983). In other words, the ALJ may rely on the testimony of a vocational expert in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations. *See Varley*, 820 F.2d at 779 (*quoting O'Banner v. Secretary*, 587 F.2d 321, 323 (6th Cir. 1978)).

At the hearing, the ALJ posed several hypothetical questions to the VE, all of which incorporated Plaintiff's nonexertional limitations, as well as Plaintiff's age, education, work experience, residual functional capacity for less than a full range of sedentary work, and postural limitations. TR 54-56. With regard to the hypothetical questions posed by the ALJ and the VE's answers thereto, the hearing transcript reads as follows:

> ALJ: Okay. Now I ask you to assume the following hypothetical. Now this hypothetical individual would have, would be of the same work background as the claimant, but let's assume that such an individual were able to frequently lift two to three pounds, occasionally lift 10 pounds, could sit for six hours in an eight hour day, stand and walk for a few hours in an eight hour day, and had limitations in that they were able to no more than frequently handle, finger and feel bilaterally, right hand being the dominant hand, pushing/pulling limitations consistent with lifting and carrying limitations, rarely able to operate foot controls left or right, not able to engage in any climbing activity, no more than occasionally able to stoop, kneel, crouch and never crawl at all during work activity. An individual would need to avoid all exposure to work hazard such as unprotected pipes, moving machinery, moving mechanical parts, the individual would need to

avoid concentrated exposure to vibrations that might occur in the work place.  And that due to mental health limitations, they are able to understand, remember and carry out short simple instructions and some detailed instructions, but not complex instructions.  And they're able to interact appropriately with supervisors, coworkers, and the public on a frequent basis.  An individual able to adapt to occasional changes in the work setting.  Now such an individual with those abilities or limitations, is there work that exists in the national, regional or state economies compatible with that, those limitations?

VE:  Yes, sir, I believe there would be.  Certainly this individual would be restricted to unskilled sedentary work, given the totality of the impairment and limitations.  But one example of work that this individual would perform would be a printed circuit label taper, the <u>DOT</u> code is 017.684-010, this is sedentary unskilled work with an SVP of two.  There are approximately 288,000 nationally, and 13,000 in the state of Tennessee.  The second example would be an order clerk in food and beverage, the <u>DOT</u> code is 209.567-014, this is also sedentary unskilled work with an SVP of two.  There are approximately 256,000 nationally, and 5,000 in the state of Tennessee.  A third example would be eyeglass frame polisher, the <u>DOT</u> code is 713.684-038, this is sedentary unskilled work with an SVP of two.  There are approximately 97,000 nationally, and 3,000 in the state of Tennessee.

*Id.*  This hypothetical question accurately represented Plaintiff's determined limitations, both exertional and nonexertional, as deemed credible by the ALJ.  *Compare* TR 20 *with* TR 54-55.  Accordingly, the ALJ could rely upon the VE's answer to this question in making his disability determination.

The ALJ then modified the hypothetical:

ALJ:  Now an individual due to pain needed to take unscheduled

> breaks in the course of a work day, and those breaks were two to three unscheduled breaks, that is in addition to regular rest breaks that were given in the work place, and those rest periods last as long as 15 minutes, would that be compatible with work that exists in the national, regional, or state economies?

> VE:    Your Honor, an individual taking breaks with that frequency in addition to their normal breaks in all likelihood is not going to be able to maintain employment because they're not going to meet their employer's standards for productivity on the job.

*Id.*

Plaintiff is correct in stating that, in response to this hypothetical question and the hypothetical questions posed to the VE by Plaintiff's counsel, the VE testified that those hypothetical individuals were precluded from maintaining employment.  TR 56-58.  As discussed above, however, an ALJ can properly rely upon the testimony of a VE in response to a hypothetical question when that hypothetical question contains the exertional and non-exertional limitations deemed credible by the ALJ.  After evaluating all of the medical and testimonial evidence of record, the ALJ in the case at bar made a reasoned RFC determination that did not include the need for Plaintiff to take two to three unscheduled breaks during the course of a workday.  Because the ALJ's first hypothetical question accurately represented Plaintiff's limitations, the ALJ properly relied on the VE's answer to the hypothetical question to prove the existence of a significant number of jobs in the national economy that Plaintiff could perform. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary*, 823 F.2d 922, 927-28 (6th Cir. 1987); and *Varley*, 820 F.2d at 770.  Accordingly, Plaintiff's claim fails.

**6. Plaintiff's GAF Scores**

Plaintiff maintains that the ALJ failed to properly evaluate his mental impairments and resulting functional limitations by failing to mention his GAF score of 48, as reported by his treating physician. Docket No. 14-1 at 10.

Defendant responds that the ALJ did mention this GAF score when he noted that records "reflect [Plaintiff's] GAF as a range between 40 and 55 . . . ." Docket No. 15 at 13, *citing* TR 24. Defendant also argues that the Commissioner "has declined to endorse GAF scores as indicative of Social Security disability." *Id.*

Regarding Plaintiff's GAF scores, the ALJ stated as follows:

> The medical reports from Stephen Humble, M.D. and Martha Ainsworth, LCSW reflect the claimant's GAF as a range between 40 and 55, which is indicative of serious symptoms; however, the Administrative Law Judge notes that the Commissioner has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements of the mental disorders listing." *See* 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000). <u>Also see</u>, <u>DeBoard</u> <u>v. Barnhart</u>, No. 05-6854 (6th Cir. Dec 15, 2006). (Exhibits 9F and 13F). Therefore, the underlying findings of the medical and non-medical evidence are found to be more relevant in determining the claimant's residual functional capacity than a GAF score, which lacks reliability in disability determinations.

TR 24.

As can be seen, the ALJ was aware of Plaintiff's GAF score, and explained his rationale for not relying upon it. *Id.* Additionally, the Sixth Circuit does not require that an ALJ consider a GAF score to be determinative of disability. *See, e.g.*, *Kennedy v. Astrue*, 247 Fed. Appx. 761,

766 (6th Cir. 2007). In *Kennedy v. Astrue*, the court stated:

> GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's functioning.
>
> Furthermore, the Commissioner "has declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'"

*Id* (citations omitted).

It is clear from the ALJ's detailed, articulated rationale that he properly considered all of the medical and testimonial evidence of record, including Plaintiff's GAF scores, when determining that Plaintiff was not disabled for the reasons discussed above. Because there is substantial evidence to support such a finding, the ALJ's determination must stand.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgement on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any

response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


_____
E. CLIFTON KNOWLES
United States Magistrate Judge